**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANA MARIA ALVARADO AYALA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 cv 233 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ana Maria Alvarado Ayala ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits under Titles II and XVIII of the Social Security Act. Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner [dkt. 19], which the Court will construe as a motion for summary judgment; the Commissioner has filed a cross-motion for summary judgment [dkt. 28]. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 19], denies the Commissioner's motion for summary judgment [dkt. 28], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

## I.    Background

### a.    Procedural History

On June 26, 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Titles II and XVIII of the Social Security Act, 42 U.S.C. §1382, alleging disability as of June 2, 2014. [Administrative Record ("R") 154-160.] Plaintiff's claims were denied initially and again at the reconsideration stage, after which Plaintiff timely requested an administrative hearing, held on August 26, 2016 before Administrative Law Judge ("ALJ") Bill Laskaris. [R 15-55.] Plaintiff was represented

by counsel, and a Vocational Expert ("VE") testified during the hearing. *Id.* On November 9, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 75-84.] On November 13, 2017, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. [R 1-6.]

**b.    Plaintiff's Background**[1]

Plaintiff is a 57-year old female, who was 53-years old at her alleged onset date of June 2, 2014 [R145-160]. As of the August 26, 2016 Administrative Hearing, Plaintiff had worked as a housekeeper at the downtown Chicago Marriott hotel for over 20 years, since April 24, 1996. [R 242-47.] In 2014, Marriott accommodated Plaintiff's doctor's request to work less than 6 hours per day, and she transitioned from housekeeping work to lighter laundry work, although there is no indication her title changed. [R 24, 242.] At the time of the Administrative Hearing, Plaintiff was working 5 hours per day, 2 days a week. [R 19.]

As to Plaintiff's pertinent medical issues, between February 2014 and June 2016, Plaintiff treated with Dr. I. Ahmad, MD for low back pain, hypertension, diabetes mellitus, and obesity. [R 410-473.] Her symptoms included low back pain, elevated blood sugar, and edema. [R 416, 421, 426, 431, 437, 442, 452, 457, 462.] A lumbar x-ray from February 2014 showed spondylolisthesis at L4-L5, bilateral facet degenerative changes at L4-L5 and L5-S1, and endplate spurs at T12-L1, L1-L2, L2-L3, L3-L4, L4-L5, and L5-S1. [R 393.] A right foot x-ray from April 2014 revealed plantar calcanealspur and small dorsal calcaneal spur. [R 390.] A right knee x-ray showed subchondral lucency along the posterior margin of the patella, narrowing of the patellofemoral compartment, and narrowing of the medial compartment compatible with degenerative change. [R 391.]

Plaintiff underwent a consultative examination in April 2014 with Dr. Lianna G. Palacci, D.O. [R 385-88.] Plaintiff described a history of low back pain since 2009 when she was diagnosed with a

---

[1]    The Court limits its discussion of the factual background of this case relevant to the analysis provided herein.

herniated disc, as well as radiating right leg/foot pain and numbness and tingling of the leg. [R 385-86.] Plaintiff noted that walking and lifting exacerbates her pain, but that lying down alleviates her discomfort. [R 386.] Dr. Palacci diagnosed Plaintiff with low back pain with no objective findings, poorly controlled type 2 insulin-dependent diabetes, and obesity. [R 388.]

Plaintiff underwent a second consultative examination in March 2015 with Dr. M. Patil, MD. Plaintiff described a history of multiple joint pain, along with constant soreness and achiness in her back, knees, hands, and feet. [R 406.] She also described experiencing difficulty with bending, lifting and carrying more than 10 pounds, walking more than a block, and prolonged sitting. *Id.* Dr. Patil noted that Plaintiff completed her squats and arises during the consultative examination "with some difficulty." [R 409.] Dr. Patil diagnosed Plaintiff with diabetes mellitus, chronic hypertension, moderate obesity, and osteoarthritis. *Id.*

In a residual functional capacity assessment from August 2016, treating physician Dr. Ijaz Ahmad, MD opined that Plaintiff could sit for less than 4 hours in an 8-hour workday and stand/walk for less than 2 hours in an 8-hour workday, and needed breaks during both activities. [R 475.] Dr. Ahmad also opined that Plaintiff could frequently lift and carry up to 10 pounds, but heavier weights should be avoided. *Id.* Dr. Ahmad felt that while Plaintiff could occasionally bend and reach during an 8-hour workday, squatting should be avoided. *Id.* Dr. Ahmad also opined that Plaintiff would need to occasionally recline during an 8-hour workday. *Id.*

c.     **The ALJ's Decision**

On November 9, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 75-84.] At Step One, the ALJ analyzed Plaintiff's earnings from her Marriott 2-day-a-week laundry work from 2014 to November 2016 and determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of June 2, 2014. [R 77.] At Step Two, the ALJ found that Plaintiff had the severe impairments of obesity, degenerative joint disease (knee and ankle), degenerative disc

3

disease, and diabetes mellitus. *Id.* The ALJ did not designate any nonsevere impairments. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 78.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform medium work, including frequently climbing ramps, stairs, ladders, ropes and scaffolds, and frequently stooping, crouching, kneeling, and crawling. *Id.* At Step Four, the ALJ found Plaintiff capable of performing her past relevant work, which the ALJ listed as a cleaner, housekeeper, and which the ALJ noted is a light, unskilled position (DOT #323-687-014). [R 82.] At Step Five, in addition to the light cleaner, housekeeper position, based on the VE's testimony, the ALJ made alternative findings of three medium exertion occupations he found Plaintiff capable of performing, namely the jobs of hand packager (DOT #920.587-018); janitor (DOT #381.687-018); and cleaner, hospital (DOT #323.687-018), which the ALJ found existed in significant numbers in the national economy. [R 83.] The ALJ determined the VE's testimony was consistent with the Dictionary of Occupational Titles. [R 84.]  Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II.   Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. §

---

[2]    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Plaintiff asserts, *inter alia*, that the ALJ's residual functional capacity finding lacks substantial support. Specifically, Plaintiff asserts that the ALJ's rejection of the opinions of Plaintiff's treating physician and the State agency medical consultants created an evidentiary deficit that the ALJ could not reasonably fill with his lay medical opinion, particularly when no opinion no medical record revealed that Plaintiff has the residual functional capacity ascribed to her by the ALJ. We agree.

### a. The ALJ's Residual Functional Capacity Finding is not Supported by Substantial Evidence

The RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545, 416.945. In assessing a claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. *See id.*

An ALJ "may not properly find that a claimant has a certain capacity to perform work-related activities without the support of a physician's medical assessment." *Dunn v. Sullivan*, 1993 WL 730745, at *4 (N.D. Ill. Jan. 29, 1993); *see also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012). While an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians, an ALJ must consider the entire record, paying particular attention to key evidence of record. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (referencing *Diaz v. Chater*, 55 F.3d 300, 306 n. 2 (7th Cir.1995)); *Dunn*, 1993 WL 730745 at *5. An ALJ "may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase*, 458 F. App'x at 557 (citations omitted). Here, the ALJ gave "little weight" to the medical opinions of record on both ends of the spectrum and then failed to provide adequate supporting rationale for his conclusion that Plaintiff retained the ability to perform work at a medium RFC. Specifically, the ALJ took little stock in the opinions of either consultative medical examiner (Drs. Kenney and Bilinsky) who found Plaintiff to have no severe physical impairment, while also

taking a dim view of Plaintiff's treating physician, Dr. Ahmad, who opined that Plaintiff could not sustain work on a full-time basis. [R 81.]

The Commissioner argues that the ALJ did not outright "reject" the physicians' opinions because giving them "little weight" is not the same as giving them "no weight" and that the ALJ determined the RFC based on "a close review of the evidence, including, among other things, the mild findings on imaging, plaintiff's activities, and conservative treatment." [Dkt. 29, p. 6.] While this first part may be strictly true here, it does not negate the ALJ's duty to consider the entire record. *Schmidt*, 496 F.3d at 845; *Dunn*, 1993 WL 730745, at *5. Therefore, we look to the second part, the ALJ's consideration of the evidence of record. Unfortunately, the allegedly "close review of the evidence" by the ALJ in this case wholly neglected what is, in the Court's view, an essential piece of evidence: the Work Activity Questionnaire the SSA sought and received from Plaintiff's employer. [R 242-47.]

The record reflects that on June 26, 2014, the SSA asked Plaintiff's employer about Plaintiff's competency in her housekeeper position in order to determine whether that position "is/was subsidized or was an unsuccessful work attempt."[3] [R 243.] The SSA asked that the Work Activity Questionnaire be filled out by someone having "direct knowledge of the employee's work activity." [R 247.] On July 8, 2014, Robert Hawkins, the Director of Human Resources at Marriott, completed the SSA's Work Activity Questionnaire. [R 245-46.] Mr. Hawkins even volunteered a full page of supplemental "additional information to help clarify [Plaintiff's] situation." [R 242.] In the Work Activity Questionnaire, Mr. Hawkins stated that as to Plaintiff's prior housekeeper position (classified as light by the ALJ), Plaintiff was unable to complete all the job duties required of her without special

---

[3]   The record does not indicate whether the SSA ever reached a conclusion as to whether Plaintiff's position was subsidized, but the SSA's letter to Marriott reflects that "[a] subsidy can be reflected by giving the employee: extra assistance; full wages for lower quality or quantity than standard; or fewer and/or easier duties than usual for that position." [R 243.] Mr. Hawkins's responses as to Plaintiff's competency in her housekeeper position indicate that the position may have indeed been subsidized, but that issue is not for this Court to decide. *Subsidy & Special Conditions*, Soc. Sec. Admin., http://www.socialsecurity.gov/disabilityresearch/wi/subsidies.htm (last visited December 3, 2018).

assistance; Plaintiff was unable to complete her job duties in the same amount of time as other housekeepers (in fact, Plaintiff was rated at 50% or less than other housekeepers' productivity rate); Plaintiff had "frequent absences" prior to being given a schedule accommodation pursuant to a doctor's request that Plaintiff work less than 6 hours per day; although Marriott would have preferred Plaintiff to work 40 hours or more per week, "she was unable to physically do this;" Plaintiff needed lower production standards, extra help/supervision, fewer or easier duties, fewer hours, irregular hours, and special equipment/tools needed to complete her housekeeping role; and that Marriott was paying Plaintiff more per hour than they would another employee in a similar position. [R 242-47.] In Mr. Hawkins's supplemental letter to the SSA, he also provided a list of what Marriott had adopted as Plaintiff's lifetime work restrictions, as follows: "cannot sit or stand for long periods; cannot work more than 6 hours per day; avoid lifting, pushing, pulling more than 20#." [R 242.]

Essentially, this Work Activity Questionnaire details the exact ways in which Plaintiff was unable to perform her housekeeper position without multiple accommodations, including allowances for frequent absences. Yet the ALJ seemingly ignored this Work Activity Questionnaire in determining Plaintiff's RFC. Thus, after discounting the opinion of every physician in this case, the ALJ then assigned Plaintiff a capacity to perform work-related activities that was clearly in excess of what she could actually do on a daily basis for her employer. The ALJ's finding that Plaintiff could perform her past relevant work as housekeeper was unsupported by the record; rather, it was fully undermined by the Work Activity Questionnaire completed by her employer. It is entirely illogical that the ALJ found Plaintiff capable of performing her past "light" work when taking into consideration this evidence of record (which the ALJ neglected to do), and moreover found Plaintiff capable of performing jobs at a more strenuous "medium" exertion level. Perhaps the best evidence Plaintiff could not perform a light exertion housekeeper job is that she was, in fact, unable to perform this job in 2014 as she had

for the prior 18 years.[4]

As has happened here, when an ALJ "fails to discuss evidence, this Court cannot give meaningful review to the [SSA's] decision because we are unable to determine if the evidence not discussed was ignored, overlooked or simply not believed." *Dunn*, 1993 WL 730745, at *5 (N.D. Ill. Jan. 29, 1993) (citing *Bauzo v. Bowen*, 803 F.2d 917, 925 (7th Cir. 1986)). "Failure to discuss key evidence is grounds for reversal." *Id.* Thus, we must remand on the basis that the ALJ's decision lacks sufficient evidentiary support because of the ALJ's failure to address the Work Activity Questionnaire, particularly after he had given no meaningful weight to any medical opinion in the record.

Although we find the record indicates Plaintiff was unable to perform her light exertion housekeeper job, this is not to say Plaintiff might not retain the RFC to perform a sedentary job, but this is an analysis for the ALJ on remand.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 19] is granted. The Commissioner's motion for summary judgment [dkt. 28] is denied.

Date: 12/20/2018

_____
U.S. Magistrate Judge, Susan E. Cox

---

[4] There is some question in the Court's mind as to whether Plaintiff's housekeeping position was a light position or a medium position. (*Compare* light exertion 323.687-014 - CLEANER, HOUSEKEEPING (any industry) position *with* medium exertion 323.687-018 - HOUSECLEANER (hotel & rest.) position and *with* Plaintiff's testimony concerning her job functions including, *inter alia*, having to regularly lift more than 20 lbs. [R 19-23 at 23.]; § 404.1567.) Nonetheless, the ALJ adopted the VE's testimony on this point and the Court analyzes the decision in front of it. The outcome here would have been no different if the ALJ had found Plaintiff's housekeeper position to be medium exertion work because the fact remains that Plaintiff could not do the work (and thus likely other medium exertion jobs) per the Work Activity Questionnaire.